U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

OCT 1 5 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

WILMA K. HILL

versus

CIVIL ACTION NO. 07-0180
JUDGE TOM STAGG

CADDO PARISH SCHOOL BOARD

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, Caddo Parish School Board ("the Board"). See Record Document 46. For the reasons set forth below, the Board's motion for summary judgment is **GRANTED**.

## I. BACKGROUND[1]

Wilma K. Hill ("Hill"), a black female, worked as a school bus driver for the

---

[1] Local Civil Rule 56.2 of the Uniform District Court Rules requires that "[e]ach copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." The rule further provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Hill did not controvert the statement of material facts filed by the Board. Thus, all material facts set forth in the Board's statement have been deemed admitted, for purposes of this motion, and the fact section of this opinion is drawn largely from the Board's filing per Local Rule 56.2.

1

Board. She was terminated from her job on December 12, 2005, for "repeatedly being late for the assigned time to pick up and drop off students." Record Document 46, Statement Of Uncontested Facts at 1. For example, on Wednesday, August 29, 2005, Hill left her school bus unattended in the driveway of Ridgewood Middle School while she went to the school's office because her daughter (a seventh grade student at the school) had been detained in the school office after being involved in a fist fight. See id. The school principal asked Hill if she was going to drive the students home that day. Hill responded that she was too emotionally upset to drive the bus. A substitute driver was unable to be located so Hill eventually agreed to drive the students home. See id.

On September 14, 2005, Hill attended a disciplinary hearing regarding her daughter's behavior. During this meeting, Hill "spoke emotionally against three Ridgewood Middle School administrators, was extremely argumentative and emotional, and continually interrupted Lynette Everett, the supervisor who conducted the hearing." Id. As a result of these incidents at Ridgewood, Hill's bus route was changed from Ridgewood Middle School to Keithville Elementary/Middle School, effective September 28, 2005. Otis Jones, Director of Transportation, decided to transfer Hill after receiving a memo from Ridgewood Middle School principal, Gerald Burrow, who requested that Hill be transferred to another school

because of her attitude towards administrative officials at Ridgewood Middle School. Hill's transfer did not affect her pay grade or salary. See id., Statement Of Uncontested Facts at 2.

Hill's new bus route also included Westwood Elementary. The principal at Westwood, Carla Moore, reported Hill as being late ten times during the month of October 2005. The principal of Keithville Elementary/Middle School, Jim Moran, also experienced problems with Hill's performance and reported these issues in a memo sent to Transportation Director Jones and David Barr, Director of Classified Personnel. See id. Principal Moran reported that Hill was inconsistent with her morning and afternoon arrival times and that he had received complaints every day from parents about Hill's inconsistent pickup and drop-off times, as well as numerous complaints about her driving. See id.

Another incident involving Hill occurred on November 14, 2005. On that date, Hill waited until 6:30 a.m. that morning to notify someone at Transportation that she needed a substitute for her bus run. As a result, the bus did not arrive at the school until 8:30 a.m., which was late. See id.

On November 15, 2005, Hill was scheduled to arrive at the school for afternoon pickup at 2:15 p.m. At 2:25 p.m., Hill called the school to indicate that she would be late. At approximately 2:45 p.m., thirty minutes after her scheduled

pickup time, Hill called back to the school and said that she had been given a shot at her doctor's office and would be unable to drive. See id.

On December 1, 2005, Hill met with Director of Classified Personnel Barr to review the charges against her. At Hill's request, Barr provided information regarding the charges against her for Hill to review. Hill was asked to provide a response to the charges no later than the close of business on December 9, 2005. The only response received was a note, along with her bus keys and Fuelman card. See id.

Hill filed suit against the Board in this court, alleging race discrimination and retaliation. See Record Document 1. Hill based her claims on her termination, her transfer away from the Ridgewood Middle School bus route, an alleged threat made by Donald Toppett[2] to "snatch" Hill off of her bus, the use of a school bus image in place of her photo in a school yearbook, and an alleged slur by the principal of J.P. Timmons Elementary School.[3] The Board filed a motion for summary judgment, seeking the dismissal of all claims with prejudice. See Record Document 46.

---

[2]Toppett was a supervisor with the Board's transportation department.

[3]Hill alleges that the principal stated, "You people are never satisfied." Record Document 46, Hill Deposition at 94.

4

## II. LAW AND ANALYSIS

A. **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (citations and quotations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

5

## B. Hill's Failure To Respond To The Board's Motion.

The Board served on Hill a copy of its motion for summary judgment on June 30, 2008. To date, Hill has not responded. Local Rule 7.5W requires a respondent opposing a motion to "file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 15 days after service of the motion." Clearly, Hill failed to oppose the motion for summary judgment within the required fifteen day period. Federal Rule of Civil Procedure 56 states the following:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

Hill's failure to oppose the Board's motion for summary judgment is an insufficient basis, standing alone, for a grant of summary judgment. See Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1022-23 (5th Cir. 1995). The Board still must establish the absence of a genuine issue of material fact before it can prevail on a summary judgment motion. See id. However, as discussed below, the court finds it appropriate to enter summary judgment against Hill.

## C. Scope Of District Court Inquiry.

This court must determine the scope of its inquiry into Hill's claims. There are two requirements for filing a Title VII action in federal court: (1) the complaint must be filed within the time required by Title VII, and (2) the complainant must first have exhausted her administrative remedies. See Tolbert v. United States, 916 F.2d 245, 247 (5th Cir. 1990). The scope of the inquiry at the district court is limited to the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. See Young v. City of Houston, 906 F.2d 177, 179 (5th Cir. 1990).

In her charge of discrimination filed with the EEOC, Hill indicated that her primary claim against the Board is discrimination based on "race" and/or "color." See Record Document 46, Hill Deposition at Ex. 9. During her deposition, Hill was asked to state every act taken against her that she considered to be discriminatory. In addition to the acts addressed in her charge or charge questionnaire, she indicated that she also intended to bring a claim regarding her age. However, Hill admitted that she did not check the "age" box on her charge of discrimination. She also admitted that she did not provide any details about her age claim in the narrative section of her charge and she made no mention of an age claim in her official EEOC charge questionnaire. This court will only review claims that reasonably arise out

of Hill's EEOC complaint. See Young, 906 F.2d at 179. As Hill admitted that she did not indicate that age was an issue in any way in her EEOC documents, any claim for age discrimination will not be considered.[4] Accordingly, the Board's motion for summary judgment is **GRANTED** as to any of Hill's claims based upon age discrimination.

**D.     Race Discrimination.**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of her race. See 42 U.S.C. § 2000e-2(a)(1). Hill alleges that the Board discriminated against her on the basis of her race. Because Hill presents no direct evidence of discrimination, her claims of discrimination are governed by the tripartite burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under this analysis, if Hill establishes a prima facie case of discrimination, the burden shifts to the Board to articulate a legitimate, non-discriminatory reason for its decisions. See id. at 802-03, 93 S. Ct. at 1825. If the Board satisfies this burden, the burden shifts back to Hill, who must prove that "the legitimate reasons

---

[4]In addition, Hill failed to raise any issue regarding age in her pleadings; therefore, she has waived this claim.

offered by [the Board for its decisions] were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000) (quotation and citation omitted).

### 1. Lack Of Ultimate Employment Decisions.

The Board contends that Hill has failed to establish a prima facie case of race discrimination. In these circumstances, Hill may establish a prima facie case of race discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for the position held; (3) she was subject to an adverse employment action; and (4) she was treated differently from others similarly situated or was replaced by someone outside of the protected class. See Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001); Okoye v. Univ. of Tex. Houston, 245 F.3d 507, 512 (5th Cir. 2001). For Title VII claims, adverse employment actions include "only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007) (citing Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002)).

Hill's transfer from the Ridgewood Middle School bus route to a different route is not an adverse employment action. There is no evidence that her compensation was affected by this transfer, nor that any harm or objective worsening of the job occurred by virtue of the transfer. Simply stated, there was no

adverse employment action as to this claim. In addition, the placement of a graphic of a school bus in place of Hill's photograph in a school yearbook is not an adverse employment action. As Hill was not subjected to adverse employment actions in these instances, her discrimination claims regarding the transfer from one bus route to another and the yearbook incident fail. See Rios, 252 F.3d at 378.

## 2. Harassment.

Hill's claims regarding an alleged threat by Donald Toppett to "snatch" her off of her school bus and an alleged racial statement made by the principal of Timmons Elementary School also do not survive summary judgment. Hill may establish a Title VII violation by proving that racial discrimination has created a hostile or abusive work environment. See Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002); Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001). To establish a hostile work environment claim, Hill must prove five elements: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to

take prompt remedial action. See Celestine, 266 F.3d at 353.[5]

In order for harassment on the basis of race to "affect a term, condition, or privilege of employment," the harassment must be "'sufficiently severe or pervasive to alter the conditions of [] employment and create an abusive working environment.'" Ramsey, 286 F.3d at 268 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)). The court must consider all of the circumstances surrounding the alleged harassment to determine if it rises to this level, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

There is no evidence in the record to indicate that either of the alleged events about which Hill complains was in any way based upon race. Hill's belief that the alleged incidents were racial and offensive is not sufficient. However, even if the acts were based upon race, they would not rise to the level necessary to support a claim of hostile work environment. The alleged hostile environment was not so severe or pervasive that it affected a term or condition of her employment. Courts have repeatedly deemed much more offensive conduct and comments to be

---

[5]However, in cases where the alleged harassment has been committed by a supervisor with "immediate (or successively higher) authority over the harassment victim," Hill need not establish the fifth element. Id.

11

inadequate. See Pickens v. Shell Tech. Ventures Inc., 118 F. App'x 842 (5th Cir. 2004) (holding that company Christmas party featuring a "traditional Dutch skit" in which children appeared in black face and during which other employees in the audience made racially derogatory comments to African-American employees was not severe or pervasive); Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005); Shepard v. Comptroller of Pub. Accounts of State of Tex., 168 F.3d 871 (5th Cir. 1999); Waltman v. Int'l Paper Co., 875 F.2d 468 (5th Cir. 1989). The conduct complained of by Hill simply does not rise to the level necessary to create a hostile work environment. Hill has wholly failed to demonstrate that the Board's actions were racially motivated and "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." Celestine, 266 F.3d at 353.

### 3. Termination.

This court will assume, without deciding, that a prima facie case exists as to Hill's discrimination claim regarding her termination and will thus proceed to the next step of the McDonnell Douglas analysis as to this issue. Thus, the burden of production is shifted to the Board to proffer a legitimate, non-discriminatory reason for the challenged employment action.

The Board satisfied its burden of producing legitimate, non-discriminatory

reasons for it decision to terminate Hill. Its burden in this regard "is one of production, not persuasion . . . [and] can involve no credibility assessment." Reeves, 530 U.S. at 142, 120 S. Ct. at 2106. Unsatisfactory job performance is the epitomy of a legitimate, non-discriminatory reason for the decision to terminate an employee. Hill's inability to timely deliver and pick up children to and from school was fatal to her ability to continue in her employment as a school bus driver. This inconsistency was evidenced by a myriad of supporting documents provided by the Board, including an affidavit from Otis Jones, the Transportation Director for the Board, wherein he detailed numerous complaints he received regarding Hill's timeliness (or lack thereof) as a bus driver. See Record Document 46, Ex. 18.

These reasons, in addition to numerous others supported by the documentary evidenced proffered by the Board, satisfy and far exceed the Board's burden to produce a legitimate, non-discriminatory basis for terminating Hill's employment. Accordingly, the presumption of unlawful discrimination disappears, and the burden shifts back to Hill to prove that the proffered reasons are a pretext for discrimination. The ultimate determination in the summary judgment context is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000); Reeves, 530 U.S. at 143, 120 S. Ct. at

2106.

Hill has presented *no evidence whatsoever* of pretext to support a reasonable inference of discrimination in this case. She has failed to demonstrate a genuine issue of material fact as to whether the Board's employment actions were illegally motivated. As mentioned, Hill has failed to respond to the Board's motion for summary judgment. The Board has proffered legitimate, non-discriminatory reasons for its decisions, and Hill has not presented any evidence of pretext to support a reasonable inference of discrimination. Viewing all of the summary judgment evidence in a light most favorable to Hill, the court holds that no reasonable factfinder could infer race discrimination therefrom, and accordingly, the Board's motion for summary judgment is **GRANTED** as to Hill's claims of race discrimination.

E.  **Retaliation.**

Hill also asserts a Title VII retaliation claim. To succeed on this claim, she must show that (1) she engaged in activity protected by Title VII, (2) the Board took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse employment action.[6] See Raggs v. Miss.

---

[6] Like discrimination claims, retaliation claims can be subject to the McDonnell Douglas burden shifting analysis if circumstantial evidence is used, as is the case here. However, because Hill has failed to establish a prima facie case of retaliation,

14

Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002).

Hill cannot show that a causal connection existed between any protected activity and any adverse employment action. The only protected activity in which Hill participated was her contact with the EEOC. Hill did not file her charge questionnaire with the EEOC until February 2, 2006. She did not file her official charge of discrimination with the EEOC until March 23, 2006. Her termination was processed in December of 2005 and her transfer from one bus route to another occurred in September of 2005 (assuming for sake of argument only that the transfer from one bus route to another was an adverse employment action). To establish a causal connection, Hill must show that the Board's decision regarding an adverse employment action was based on *knowledge* of the protected activity. See Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998) (emphasis added). "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 386 (5th Cir. 2003). In addition, to establish a causal connection, Hill must "produce *some* evidence of a causal link between the protected activity and the adverse employment action. . . ." Id. at 385 (emphasis in original) (citation

---

the burden never shifts to the Board.

omitted). Hill has provided no evidence establishing such a link, nor is it plausible that the Board was even aware of her complaints to the EEOC prior to any adverse actions. Therefore, the Board's motion for summary judgment is **GRANTED** as to Hill's claims of retaliation.

F.  **The Americans With Disabilities Act.**

Hill also asserted that the Board discriminated against her based upon her disability.[7] This claim would implicate the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 11011. This allegation, likewise, must fail.

1.  **The Prima Facie Case Of Discrimination.**

In a circumstantial evidence situation such as this, the court will apply the McDonnell Douglas, Title VII burden-shifting analysis. See Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir.1995) (citing McDonnell Douglas, 411 U.S. at 800, 93 S. Ct. at 1824). Under this framework, a plaintiff must first make a prima facie showing of discrimination by establishing that: (1) she is disabled or is regarded as disabled; (2) she is qualified for the job; (3) she was subjected to an

---

[7]The court notes that it is questionable whether Hill properly asserted a claim for disability discrimination, as (1) she failed to mention disability or anything relating to a disability in her charge of discrimination filed with the EEOC, and (2) she failed to mention disability or anything relating to a disability in her complaint filed with this court. However, out of an abundance of caution, the court will nonetheless analyze this claim.

16

adverse employment action on account of her disability; and (4) she was replaced by or treated less favorably than non-disabled employees. See Burch v. Coca-Cola Co., 119 F.3d 305, 320 (5th Cir.1997). Once the plaintiff makes her prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination. See Daigle, 70 F.3d at 396.

### 2. Is Hill Either Disabled Or "Regarded As" Disabled?

As noted above, the threshold element of a prima facie showing of discrimination under the ADA is a showing that the plaintiff either is, or is regarded as being, disabled. Failure to establish an actual or perceived disability is thus fatal to Hill's case. A "disability" under the ADA is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; a record of such impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102.

Hill's only claim related to a disability is that she was under a doctor's care at the time of her termination. This sole allegation is clearly insufficient to merit a conclusion that she is disabled or that she was "regarded as" disabled by the Board.

17

Hill has not in any way shown that she has an impairment that substantially limits a major life activity, that she had a record of such, or that she was regarded as having such. Therefore, the Board's motion for summary judgment as to Hill's claim for disability discrimination is **GRANTED**.

### III. CONCLUSION

For the reasons stated above, the Board's motion for summary judgment (Record Document 46) is **GRANTED**. A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 15th day of October, 2008.

JUDGE TOM STAGG